HARDY MYERS
Attorney General
AARON SPRAGUE #06228
Assistant Attorney General
ELIZABETH K. BONUCCI #06322
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4791
Email: aaron.sprague@doj.state.or.us
elizabeth.bonucci@doj.state.or.us

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JOSEPH DOWNEY WADE,<br><br>    Plaintiff,<br><br>v.<br><br>STATE OF OREGON; UNIVERSITY OF OREGON; and JOHN MOSELEY, in his official and individual capacities,<br><br>    Defendants. | Case No. 01-6178-HO<br><br>DEFENDANTS' REPORT ON AFFIRMATIVE ACTION COMPLIANCE |

## I. Procedural Background

The Plaintiff, an African American and former University of Oregon administrator, originally filed this case on June 1, 2001. (Dk. 1). At that time, the Plaintiff alleged that the University of Oregon had discriminated against him because of his race in making certain decisions regarding his continued employment. After protracted negotiation, the parties agreed to settle this case, and a settlement agreement was entered into on June 27, 2002. (Dk. 19). This settlement agreement is attached hereto as Exhibit A. The settlement agreement gave the Court continuing jurisdiction over this matter for six years. In January or February 2008 the Plaintiff,

Page 1 -  DEFENDANTS' REPORT ON AFFIRMATIVE ACTION COMPLIANCE
       AS/cbh/TRIV9274

together with William Harbaugh, sent a letter to the Court alleging that the University had violated the settlement agreement in several ways. (Dk. 22). At the Court's direction the Defendants responded to this letter. (Dk. 24). Thereafter, the Plaintiff filed a motion to enforce the settlement agreement. (Dk. 28). After reviewing the Defendants' response to the Plaintiff's motion, and hearing oral argument, the Court, on June 20, 2008 ordered the Defendants to: a) provide the Court and the Plaintiff copies of all documents relating to the University of Oregon's exit interview protocol, and b) file a report on whether the University of Oregon complied with it's affirmative action policies in filling the positions of Vice President for Student Affairs and Vice Provost for Institutional Equity and Diversity. (Dk. 32). This report is made pursuant to that order. The Court and the Plaintiff should be aware that this filing covers **both** the production of the exit interview protocol documents and a report on University's compliance with its affirmative action hiring procedures.

## II. Factual Background Relating to the Hiring of the Vice President of Student Affairs and the Vice Provost for Institutional Equity and Diversity

### A. Facts relating to the appointment of Anne Leavitt and Michael Eyster as Interim Vice President of Student Affairs and the hiring of Robin Holmes as Vice President of Student Affairs

In June of 2002, the position of Vice President of Student Affairs at the University of Oregon was vacant. *Affidavit of Melinda Grier*, ¶ 3-8 (August, 4 2008). In the settlement agreement reached by the parties, the University indicated its intention to fill that position, and promised that in so doing it would abide by its affirmative action policies and attempt to recruit a person of color. Exhibit A. However, the parties acknowledged that financial constraints on the University might make filing the position difficult at that time. *Id.*

Prior to the signing of the settlement agreement, the University had attempted to fill the position of Vice President of Student Affairs. In 2001 – 2002 the University undertook a national search for candidates to fill that vacant position. *Aff. Grier*, ¶ 3-4. This search included the following: a) posting the position on the University of Oregon's HR website; b) publishing the vacancy in relevant publications; c) forming a search committee to coordinate recruitment

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700

efforts; and d) hiring a national search firm to look for potential candidates. *Id.* Unfortunately, this search failed to produce any candidates suitable to fill the position. *Id.* at ¶ 5.

After this failed search, the University decided to appoint an Interim Vice President of Student Affairs to for two years. Documents maintained by the University of Oregon Office of Affirmative Action and Equal Opportunity (hereinafter "AA&EO") pertaining to this interim appointment are attached hereto as Exhibit B. Anne Leavitt was appointed Interim Vice President of Student Affairs in July 2002. *Aff. Grier*, ¶ 8. This interim appointment was made only after requesting and receiving approval from the AA&EO. *Id.* at ¶ 7; Exhibit B. On or about November 23, 2003 AA&EO was consulted regarding extending Ms. Leavitt's appointment as Interim Vice President for Student Affairs for two more years. Exhibit B. The reason for the extension was that, at that time, financial constraints on the University would have made it difficult to conduct another national search that would have been successful in attracting the caliber of person needed to fill that post. *Id.* AA&EO approved this extension. *Id.* In January 2004, the University posted on the University's Human Resources Website its intent to extend the interim appointment of Ms. Leavitt to the position Vice President of Student Affairs. *Id.* Thereafter, Ms Leavitt continued to serve as Interim Vice President of Student Affairs until she resigned in June 2005 in order to pursue employment outside the University. *Aff. Grier*, ¶ 9.

In June of 2005, the University sought approval from AA&EO to appoint Michael Eyster as Interim Vice President of Student Affairs. *Affidavit of Penelope Daugherty*, ¶ 6 (August 4, 2008). Documents maintained by AA&EO pertaining to this interim appointment are attached hereto as Exhibit C. Mr. Eyster's appointment was never meant to be permanent, but rather a "stop gap" measure to provide stability in the office of the Vice President of Student Affairs until a suitable person could be found to fill the position permanently. *Affidavit of Linda Brady*, ¶ 6 (August 4, 2008); Exhibit C, p. 1. AA&EO approved this appointment. *Aff. Daugherty*, ¶ 6. On June 30, 2005 the University posted, for public comment, a notice of its intent to appoint Mr. Eyster as Interim Vice President of Student Affairs on its Human Resources website.

Page 3 -   DEFENDANTS' REPORT ON AFFIRMATIVE ACTION COMPLIANCE
           AS/cbh/TRIV9274
                                        Department of Justice
                                        1162 Court Street NE
                                        Salem, OR 97301-4096
                                        (503) 947-4700

Exhibit C, p. 3. Thereafter Mr. Eyster began serving as Interim Vice President of Student Affairs.

Between approximately December 2006 and July 2007 the University conducted a second national search for candidates to fill the position of Vice President of Student Affairs. *Aff. Brady,* ¶ 7. Like the first search, this second search included taking the following steps: a) posting the position on the University of Oregon's HR job web page; b) advertising the position in the Chronicle of Higher Education and other publications; c) forming a search committee chaired by Deborah Carver and consisting of administration, faculty and student representatives; d) hiring the national search firm of Issacson, Miller to recruit candidates from around the country; e) conducting several rounds of interviews with semi-finalists and finalist for the position; and f) holding open forums around campus to get feedback on potential candidates. *Id.* Dr. Robin Holmes, an African American Female, applied for the position during this national recruitment process. *Id.* at ¶ 8. At the conclusion of that process Dr. Holmes was hired as Vice President of Student Affairs. *Id.* at ¶ 9. Since the time of her hire, Dr. Holmes has worked full time as the Vice President of Student Affairs. The position of Vice President of Student Affairs was not given to her as an addition to the duties she was fulfilling at the time she was hired. *Id.* at ¶ 11.

    B.    <u>Facts relating to the appointment of Dr. Charles Martinez as Vice Provost for Institutional Equity and Diversity</u>

The settlement agreement in this case required the University of Oregon to establish the position of Vice Provost for Institutional Equity and Diversity. The University promised that in filling this new position it would abide by its affirmative action hiring procedures and make every effort to hire a minority. Exhibit A. After entering into the settlement agreement, the University conducted a national search to fill the position of Vice Provost for Institutional Equity and Diversity. This search nearly failed, but at the end of the process Gregory Vincent applied for and was offered the position. The Plaintiff has raised no concerns over the hiring of Dr. Vincent. Dr. Vincent resigned in 2005 to take a job with another university.

Page 4 - DEFENDANTS' REPORT ON AFFIRMATIVE ACTION COMPLIANCE
AS/cbh/TRIV9274
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700

At the time of Dr. Vincent's departure, his office had just drafted, and circulated to the campus community, the first draft of the University's Diversity Plan. *Affidavit of Charles Martinez*, ¶ 5-6 (August 2, 2008). The Diversity Plan is a critical element of the University's effort to promote cultural diversity on campus. It sets forth directions to each and every school, college and administrative unit within the University of Oregon relative to achieving the University's goal of maintaining a culturally and ethnically diverse workforce and student body and promoting a campus culture that inclusive and welcoming. *Aff. Martinez*, ¶ 4. When it was first issued in 2005, the first draft of the Diversity Plan drew severe criticism from across the political spectrum, and the University's efforts to implement the plan were in jeopardy of failing. *Id.* at ¶ 7.

The University's administration decided that it would be detrimental to the progress of diversity on campus to let the post of Vice Provost for Institutional Equity and Diversity remain vacant at this critical juncture while they did another national search. *Aff. Daugherty*, ¶ 7. They decided, therefore, to appoint Dr. Charles Martinez, a Latino Male, to the post of Interim Vice Provost for Institutional Equity and Diversity. *Id.* Documents maintained by AA&EO pertaining to Dr. Martinez's appointment as Vice Provost for Institutional Equity and Diversity are attached hereto as Exhibit D. Following the same procedure it adhered to in the interim appointments of Ms. Leavitt and Mr. Eyster, prior to appointing Dr. Martinez to be Interim Vice Provost for Institutional Equity and Diversity, the University sought and obtained the approval of AA&EO and posted its intent to make the appointment on its Human Resources website. *Aff. Daugherty*, ¶ 7; Exhibit D, pp. 1, 3-6.

Between July 2005 and May 2006, Dr. Martinez worked tirelessly to refine the Diversity Plan and to build consensus around the need for the plan's implementation. *Aff. Daugherty*, ¶ 11; *Aff. Martinez*, ¶ 8. During the process of formulating and promoting the Diversity Plan, Dr. Martinez had cultivated good working relationships between himself and various constituent groups throughout campus. *Aff. Daugherty*, ¶ 11; *Aff. Martinez*, ¶ 8; Exhibit D, pp. 7-9. This

Page 5 -   DEFENDANTS' REPORT ON AFFIRMATIVE ACTION COMPLIANCE
           AS/cbh/TRIV9274
                                    Department of Justice
                                    1162 Court Street NE
                                    Salem, OR 97301-4096
                                    (503) 947-4700

hard work paid off when, on May 14, 2006, the University's Diversity Plan finally put in place. *Aff. Martinez,* ¶ 8.

With crisis surrounding the implementation of the Diversity Plan now passed, the University faced a decision regarding what to do with the office of Institutional Equity and Diversity. Dr. Martinez had been tremendously successful in the position of Interim Vice Provost for Institutional Equity and Diversity, but his appointment to that position had been temporary. Exhibit D, pp. 4-6. The University now had to decide whether to retain him in that position or replace him.

The University was reluctant to conduct a national search to replace Dr. Martinez for of the following reasons: a) the first search had been protracted, and nearly failed; b) it was unlikely that a candidate with better qualifications than Dr. Martinez would be located through a national search; and c) it would take a considerable amount of time for any replacement for Dr. Martinez to develop the type of positive working relationships he ahead fostered throughout campus. *Aff. Daugherty,* ¶ 11-12; Exhibit D, pp. 7-9. The University therefore sought approval from AA&EO to appoint Dr. Martinez to the position of Vice Provost for Institutional Equity and Diversity on a long term basis. *Aff. Daugherty,* ¶ 8. AA&EO agreed to give this approval provided that the campus community was given the opportunity to comment on the appointment and provide feedback. *Aff. Daugherty,* ¶¶ 8-9. In accordance with the condition laid down by AA&EO, the University posted its intent to appoint Dr. Martinez on a long term basis, and invited the campus community to attend a series of public meetings to meet Dr. Martinez, question him regarding his ideas, and provide feedback on his appointment. *Aff. Martinez,* ¶ 10; Exhibit D, p. 10. At the end of this process Dr. Martinez was appointed as the Vice President of Institutional Equity and Diversity. *Aff. Martinez,* ¶ 11.

Page 6 -   DEFENDANTS' REPORT ON AFFIRMATIVE ACTION COMPLIANCE
AS/cbh/TRIV9274
                               Department of Justice
                               1162 Court Street NE
                               Salem, OR 97301-4096
                               (503) 947-4700

## III. The University of Oregon's Affirmative Action Hiring Policies and Procedures

It is the strongly held policy of the University of Oregon to promote the rights of all individuals to equal opportunity in education and employment without regard to race, color, sex, national origin, age religion, marital status, disability or any other extraneous factor not substantively related to performance. In furtherance of this police of equal opportunity, the University is committed to taking affirmative action to attract minority scholars, faculty and staff. The University believes that having a racially and culturally diverse workforce and student body is critical to fulfilling the University's mission of providing top quality higher education.

At the foundation of the University's affirmative action efforts in employment are the Affirmative Action Plans. The Affirmative Action Plans which were in effect at the time of the hiring of Dr. Holmes and the appointment of Dr. Martinez are attached as Exhibits E and F respectively. An Affirmative Action Plan is a document prepared by the University which, *inter alia*, contains an analysis of the University of Oregon workforce in terms of minority and female representation, and sets forth hiring goals to ensure that racial minorities and women are adequately represented in employment. It is important to note that the goals in the Affirmative Action Plan are not hiring quotas which must be met year to year. The overarching consideration in hiring is always to hire the most qualified individual available. Each Affirmative Action Plan is merely a "snapshot" of the University's progress in achieving minority representation on campus. The Affirmative Action Plans do not, in and of themselves, mandate any type of hiring procedures for faculty or staff.

In order to ensure that the hiring goals set forth in the Affirmative Action Plans are met, the University has promulgated a number of hiring guidelines and procedures which should be followed when filling faculty and staff positions. These guidelines and procedures are attached hereto as Exhibit G. Additional instructions are posted on the University of Oregon website.

First, AA&EO has produced its "Unclassified Appointment Search Guidelines." Exhibit G, pp. 1-8. These guidelines provide guidance for consideration by hiring decision

Page 7 -   DEFENDANTS' REPORT ON AFFIRMATIVE ACTION COMPLIANCE
         AS/cbh/TRIV9274
                                    Department of Justice
                                    1162 Court Street NE
                                    Salem, OR 97301-4096
                                    (503) 947-4700

makers when filling executive level positions such as the ones at issue in this case. The focus of the guidelines is "to help ensure searches meet both the letter and spirit of our commitment to ensuring equality of opportunity and increasing the diversity of our workforce." Exhibit G, p. 1. The guidelines set forth points for consideration in relationship to affirmative action and diversity at all stages of the recruitment and hiring process.

Second, the University has published its "Unclassified Appointment Process Manual." This document can be viewed online at http://appointments.uoregon.edu/index.htm. The Unclassified Appointment Process Manual provides step-by-step instructions to help search committees filling executive level positions through a competitive search process. The Unclassified Appointment Process Manual instructs search committees on how to initiate a candidate search, recruit qualified candidates, select a candidate for hire and complete the hiring process. The Unclassified Appointment Process Manual mandates, *inter alia*, that when a search is conducted for candidates, a position description should be prepared, the position should be posted on the University of Oregon Human Resources website, and in other publications as appropriate. *See*: http://appointments.uoregon.edu/index.htm#part2. Importantly, the Unclassified Appointment Process recognizes the need for exceptions to the competitive search process, and provides instructions on how and when such exceptions can be had. *See*: http://appointments.uoregon.edu/exceptions.htm.

Third, the University has promulgated Policy Statement 3.140, entitled "Hiring of Women and Minority Faculty Members." Exhibit G, pp. 9-10. This policy statement directs that, when a minority and/or a woman is a candidate for a position, and all other considerations are equal between the candidates, the minority or female candidate should be selected for hire. It also gives other instructions regarding the consideration by the University administration of minority candidates under special circumstances.

Finally, AA&EO has published and internal management directive which should be followed in the hiring of executive level officers. Exhibit G, p. 11. (Hereinafter, the "IMD")

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700

The IMD mandates that such positions should be filled through the competitive search process described in the Unclassified Appointment Process Manual discussed above. It also provides that waivers of that process may be obtained in certain circumstances provided that AA&EO approves such a waiver. *Aff. Daugherty*, ¶ 5; Exhibit G, p. 11.

## IV. The University of Oregon has Complied with its Affirmative Action Hiring Policies and Procedures in Filling the Position of Vice President of Student Affairs and Vice Provost for Institutional Equity and Diversity

### A. The University of Oregon has complied with its affirmative action hiring policies and procedures in filling the position of Vice President of Student Affairs

In 2001, when the post of Vice President of Student Affairs was vacant, the University conducted a national search to fill that position. *Aff. Grier*, ¶ 4. That search met and exceeded the requirements of the Unclassified Appointment Process Manual and the IMD. Not only did the University post and publish the position opening as required, but also retained a national search firm that actively recruited candidates. *Id.*

After that search failed, the University sought approval from AA&EO to make an interim appointment to the position of Vice President of Student Affairs. *Aff. Grier*, ¶¶ 6-7. This request was granted, and Anne Leavitt was appointed to fill that position. *Id.* at ¶¶ 6-8. Making interim appointments in this manner does not violate the University's affirmative action hiring policies and procedures. As noted above, the Unclassified Appointment Process Manual and the IMD both specifically provide for a waiver of the competitive search requirements for filling executive level positions. *Aff. Daugherty*, ¶ 5; http://appointments.uoregon.edu/exceptions.htm; Exhibit G, p. 11. In seeking for and receiving approval from AA&EO to appoint Ms. Leavitt, the University complied with the waiver requirements described above.

Prior to Ms. Leavitt's appointment being extended, the University again sought for and received the approval of AA&EO. Exhibit B, p. 1. In so doing, the University complied with the waiver requirements of the Unclassified Appointment Process Manual and the IMD. The Documents attached as Exhibit B clearly indicate that the University knew that Ms. Leavitt was

Page 9 -   DEFENDANTS' REPORT ON AFFIRMATIVE ACTION COMPLIANCE
          AS/cbh/TRIV9274
                                Department of Justice
                                1162 Court Street NE
                                Salem, OR 97301-4096
                                (503) 947-4700

going to retire soon and they never considered her appointment as Vice President of Student Affairs to be anything other than and interim measure. Exhibit B, p. 1. A measure the University felt was necessary given the budget constraints it was under at the time. *Id.*

After the departure of Ms. Leavitt, the University sought approval from AA&EO to appoint Michael Eyster as Interim Vice President of Student Affairs. *Aff. Daugherty*, ¶ 6. Mr. Eyster's appointment another temporary measure put in place to provide stability until the Post of Vice President of Student Affairs could be filled permanently. Aff. *Brady*, ¶ 6; *Aff. Daugherty*, ¶ 6; Exhibit C, p. 1. Mr. Eyster was only appointed Interim Vice President of Student Affairs after approval for his appointment was given by AA&EO. Aff. *Brady*, ¶ 6; *Aff. Daugherty*, ¶6. Making this interim appointment complied with the waiver requirements of the Unclassified Appointment Process Manual and the IMD.

Between approximately December 2006 and July 2007 the University conducted a second national search for candidates to fill the position of Vice President of Student Affairs. *Aff. Brady*, ¶ 7. Like the first search, this second search met and exceeded the requirements of the Unclassified Appointment Process Manual. *Id.* The hiring of Dr. Holmes as Vice President of Student Affairs was the end result of that competitive national recruitment effort. *Id.* at ¶¶ 8-9. Dr. Holmes was not appointed to the position of Vice President of Student Affairs and was not given that position as an addition to her other duties. *Aff. Brady*, ¶ 11. The hiring of Dr. Holmes, an African American female, to a high level executive position at the University of Oregon, comports with the spirit of the University's affirmative action goals embodied in the applicable Affirmative Action Plan. Exhibit E.

   B. <u>The University of Oregon has complied with its affirmative action hiring policies and procedures in filling the position of Vice Provost for Institutional Equity and Diversity</u>

In 2005, when Gregory Vincent resigned as Vice Provost for Institutional Equity and Diversity, the University of Oregon's efforts to promote diversity on campus were in the midst of a crisis. *Aff. Martinez*, ¶ 7; *Aff. Daugherty*, ¶ 7. Rather than letting the post of Vice Provost for

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700

Institutional Equity and Diversity remain vacant at this critical juncture the University sought to appoint Dr. Martinez to the post of Interim Vice Provost for Institutional Equity and Diversity. In making this interim appointment, the University again adhered to the competitive search waiver requirements found in the Unclassified Appointment Process Manual and the IMD. Prior to appointing Dr. Martinez to be Interim Vice Provost for Institutional Equity and Diversity, the University sought and obtained the approval of AA&EO and posted its intent to make the appointment on its Human Resources website. *Aff. Daugherty*, ¶ 6; Exhibit D, pp. 1, 3-6.

After Dr. Martinez successfully brought the University's diversity plans back from the brink of failure, the University decided to extend a permanent appointment to Dr. Martinez. Once again, the University followed the waiver provisions in the Unclassified Appointment Process Manual and the IMD. The administration approached AA&EO and asked for a waiver. *Aff. Daugherty*, ¶ 8. The reasons given for appointing Dr. Martinez permanently as Vice Provost for Institutional Equity and Diversity were that: a) the first search had been protracted, and nearly failed; b) it was unlikely that a candidate with better qualifications than Dr. Martinez would be located through a national search; and c) it would take a considerable amount of time for any replacement for Dr. Martinez to develop the type of positive working relationships he ahead fostered throughout campus. *Aff. Daugherty*, ¶ 11-12; Exhibit D, pp. 7-9. Based on these compelling circumstances, AA&EO agreed to give this approval provided that the campus community was given the opportunity to comment on the appointment and provide feedback. *Aff. Daugherty*, ¶¶ 8-9, 12. This opportunity for public comment actually went above and beyond the requirements of the waiver requirements of the Unclassified Appointment Process Manual and the IMD. Once this public comment process had run its course, Dr. Martinez was appointed as the Vice President for Institutional Equity and Diversity. *Aff. Martinez*, ¶ 11. Appointing Dr. Martinez, a Latino, to a high level executive position in the University's

Page 11 - DEFENDANTS' REPORT ON AFFIRMATIVE ACTION COMPLIANCE
AS/cbh/TRIV9274
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700

administration comports with the affirmative action goals set forth in the applicable Affirmative Action Plan. Exhibit F.

## V. The University of Oregon has promulgated an Exit Interview Protocol

At the previous hearing on this matter, the Defendants forthrightly acknowledged that the University of Oregon had not formulated an exit interview protocol within the time frame specified in the settlement agreement. Since the filing of the Plaintiff's most recent motion, the University has corrected that error. Russell Tomlin, Senior Vice Provost for Academic Affairs, drafted an exit interview protocol on March 6, 2008. *Affidavit of Russell Tomlin*, ¶ 4 (August 1, 2008). A true and correct copy of that protocol is attached hereto as Exhibit H. Affidavit of Russell Tomlin, filed separately, discusses the goals of the protocol and the University's current exit interview activities.

## VI. Conclusion

For all the reasons states above the University has complied with both the spirit and letter of it affirmative action hiring policies and procedures. It also has now complied with the requirements of the settlement agreement requiring the formulation of an exit interview protocol

DATED this 4 day of August, 2008.

Respectfully submitted,

HARDY MYERS
Attorney General

_____
AARON SPRAGUE #06228
Assistant Attorney General
ELIZABETH K. BONUCCI #06322
Assistant Attorney General
Trial Attorneys
Tel (503) 947-4700
Fax (503) 947-4791
Aaron.Sprague@doj.state.or.us
elizabeth.bonucci@doj.state.or.us
Of Attorneys for Defendants

Page 12 - DEFENDANTS' REPORT ON AFFIRMATIVE ACTION COMPLIANCE
AS/cbh/TRIV9274
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700

# CERTIFICATE OF SERVICE

I certify that on August 4, 2008, I served the foregoing DEFENDANTS' REPORT ON AFFIRMATIVE ACTION COMPLIANCE upon the parties hereto by the method indicated below, and addressed to the following:

Suzanne Bradley Chanti
Chanti & Middleton, P.C.
245 East 4th Avenue
Eugene, OR 97401 97405
    Of Attorneys for Plaintiff

\_\_ HAND DELIVERY
\_\_ MAIL DELIVERY
\_\_ OVERNIGHT MAIL
\_\_ TELECOPY (FAX)
\_\_ E-MAIL schanti@chantilaw.com
✓ E-FILE

_/s/ Aaron Sprague_
AARON SPRAGUE #06228
Assistant Attorney General
ELIZABETH K. BONUCCI #06322
Assistant Attorney General
Trial Attorneys
Of Attorneys for Defendants
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700

Page 1 -  CERTIFICATE OF SERVICE
        AS/cbh/TRIA3078